**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **CARIE VILLANO,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **SA-23-CV-1142-JKP (HJB)** |
| | § | |
| **AMERICAN PACIFIC MORTGAGE** | § | |
| **CORPORATION d/b/a ALIGNED** | § | |
| **MORTGAGE,** | § | |
| **Defendant.** | § | |

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGEMENT

Plaintiff Carie Villano ("Plaintiff" or "Mrs. Villano") files this Motion for Partial Summary Judgment Against Defendant American Pacific Mortgage Corporation d/b/a Aligned Mortgage ("Defendant" or "APM") and in support thereof would respectfully show the Court as follows:

## I. INTRODUCTION

Plaintiff Carie Villano moves for partial summary judgment as to the *prima face* elements of her employment retaliation claim against her former employer, Defendant American Pacific Mortgage Corporation d/b/a Aligned Mortgage ("APM") under Chapter 21 of the Texas Labor Code ("TCHRA"). Specifically, Mrs. Villano has conclusively established all elements of her *prima facie* retaliation claim and seeks traditional summary judgment on these elements. Mrs. Villano further moves for no-evidence summary judgment as to several of APM's affirmative defenses.

## II. FACTUAL SUMMARY

Mrs. Villano began working at APM on April 21, 2021. Ex. 1 at ¶ 5; Ex. 4. She was employed as APM's Chief Information Officer. Ex. 1 at ¶ 6. She incurred no disciplinary or

corrective action during her employment. Ex. 1 at ¶ 7. Mrs. Villano's husband, Ken Villano, was also employed by APM as Chief of Staff. Ex. 1 at ¶ 8; Ex. 2 at ¶ 5.

Chris Cano was one of three divisional managers or "Stewards" who oversaw the Aligned Mortgage division where Mr. and Mrs. Villano worked. Ex. 1 at ¶ 9; Ex. 2 at ¶ 6.

During their employment, Mr. and Mrs. Villano witnessed Mr. Cano rubbing a fellow employee's nipples inappropriately. Ex. 1 at ¶ 10; Ex. 2 at ¶ 7. Mr. and Mrs. Villano witnessed Mr. Cano expressing that he doesn't like working for "white men." Ex. 1 at ¶ 11; Ex. 2 at ¶ 8. Mrs. Villano witnessed Mr. Cano inappropriately and suggestively crawling under a female employee's desk. Ex. 1 at ¶ 12. Mr. and Mrs. Villano witnessed Mr. Cano say that an Asian employee needed an "interpreter" to be understood. Ex. 1 at ¶ 13; Ex. 2 at ¶ 9. Mrs. Villano witnessed Mr. Cano expressing that he doesn't like working with "strong women." Ex. 1 at ¶ 14. Mr. Villano witnessed Mr. Cano embarrass an employee with Crohn's disease during a meeting saying, "So you have to go poo-poo again." Ex. 2 at ¶ 10. Mrs. Villano discussed these incidents with her husband. Ex. 1 at ¶ 15.

On October 31, 2021, Mr. Villano sent an e-mail to his supervisor, Tony Dias, as well as APM's VP of Human Resources, Demetria Hudley. Ex. 1 at ¶ 16; Ex. 2 at ¶ 11. In the e-mail, he described conduct which he, and an attorney he consulted with, suspected might go beyond "atrocious management practices" and rise "to the legal definition of a hostile work environment." Ex. 1 at ¶ 18; Ex. 2 at ¶ 13; Ex. 5. He stated that these incidents could place APM "in legal and financial peril." Ex. 1 at ¶ 19; Ex. 2 at ¶ 14; Ex. 5. He described the situation as "pervasive." Ex. 1 at ¶ 20; Ex. 2 at ¶ 15; Ex. 5. Mr. Villano also reported these incidents to Chuck Nugent, APM's General Counsel, Fred Kreger, and Demetria Hudley and said he believed they were discriminatory. Ex. 2 at ¶ 16. Mr. Villano's e-mail stated that he "communicated [his] concerns in

the past to…Chuck Nugent, Demetria Hudley, and Fred Kreger." Ex. 5. Mr. Villano then obtained a quote for employment training regarding, *inter alia*, "EEO compliance," "litigation avoidance," and "appropriate workplace culture" and submitted it to his supervisor in September 2021. Ex. 2 at ¶ 17; Ex. 6. APM does not dispute that Mr. Villano "raised concerns about religious intolerance" and "sexism" or that he "discussed those concerns with Demetria Hudley" or "Chuck Nugent." Ex. 7 at 64:11-65:4.

APM terminated Mr. Villano and Mrs. Villano December 10, 2021. Ex. 1 at ¶ 21; Ex. 2 at ¶ 19; Ex. 8. Mrs. Villano's termination letter was issued by APM's Divisional Chief People Officer Ronnie Andrade—Mr. Cano's brother. Ex. 1 at ¶ 22; Ex. 8. Mr. Nugent, Ms. Hudley, and Mr. Kreger were decisionmakers in the termination. Ex. 9 at Interrogatory No. 3. No other members of APM's leadership were contemporaneously terminated. Ex. 1 at ¶ 23; Ex. 2 and ¶ 20.

## III. TRADITIONAL MOTION FOR SUMMARY JUDGMENT

"A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 254 (1986).

"An employer…commits an unlawful employment practice if the employer…retaliates or discriminates against a person who, under this chapter…opposes a discriminatory practice…or files a complaint[.]" TEX. LAB. CODE § 21.055. "To establish a *prima facie* case of retaliation, an employee must show: (1) she engaged in an activity protected by the TCHRA, (2) she experienced a material adverse employment action, and (3) a causal link exists between the protected activity

and the adverse action." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 782 (Tex. 2018). "However, if the employer provides evidence of a legitimate reason for the adverse action, under the federal standard, the employee must prove the adverse action would not have occurred 'but for' the protected activity." *Id.*

Mrs. Villano hereby moves for traditional summary judgment as to her *prima facie* case of retaliation under the TCHRA as set forth below.

**A. MRS. VILLANO ENGAGED IN RECOGNIZED PROTECTED ACTIVITY UNDER TCHRA.**

**(i) The Substantive Law Governing TCHRA is Identical to its Federal Equivalent, Title VII.**

"The substantive law governing Title VII and TCHRA retaliation claims is identical." *Gorman v. Verizon Wireless Tex.*, L.L.C., 753 F.3d 165, 170 (5th Cir. 2014); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n. 2 (5th Cir.1999). "In discrimination and retaliation cases under the TCHRA, Texas jurisprudence parallels federal cases construing and applying equivalent federal statutes, like Title VII." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 781 (Tex. 2018). TCHRA's stated purpose is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." TEX. LAB. CODE § 21.001. State and federal courts routinely recognize that "[o]ne of the TCHRA's purposes is to 'provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments. Therefore, analogous federal statutes and the cases interpreting them guide [Court's] reading of the TCHRA." *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001). "The Texas Supreme Court has frequently observed that the Texas Commission on Human Rights Act (TCHRA) and its current incarnation, [TCHRA], were intended to "correlat[e]…state law with federal law in the area of discrimination in employment[.]" *Tex. Parks*

*& Wildlife Dep't v. Dearing*, 240 S.W.3d 330, 351 (Tex. App.—Austin 2007, pet. denied). "The relevant parts of the TCHRA are patterned after Title VII." *Sandoval v. City of Plugerville*, No. 1:15-CV-845-RP, 2016 WL 8904970, at *4 (W.D. Tex. Oct. 27, 2016), aff'd sub nom. *Sandoval v. City of Pflugerville*, 698 Fed. Appx. 783 (5th Cir. 2017).

**(ii) Mr. Villano's Protected Activity Satisfies the First Element of Mrs. Villano's *Prima Facie* Retaliation Claim as a Matter of Law.**

In defining what activities are protected under antiretaliation law, courts routinely note that "[m]agic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Brown v. United Parcel Serv., Inc.*, 406 Fed. Appx. 837, 840 (5th Cir. 2010); *Alamo Heights*, 544 S.W.3d at 787.

Under Title VII, and therefore TCHRA, an employee need not personally engage in protected activity to bring a retaliation claim. The law arising from these analogous, parallel, and indeed substantively identical antiretaliation provisions prohibit any employer action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174, 131 S. Ct. 863, 868, 178 L. Ed. 2d 694 (2011) (Scalia, J.) (holding employees within the "zone of interest" of a complaining employee can bring an antiretaliation claim). In *Thompson*, the U.S. Supreme Court—with Justice Scalia writing for the majority without dissent—determined that "firing a close family member will almost always" give rise to a retaliation claim as to that family member. *Id*. The Court rejected the argument that "only…the employee who engaged in the protected activity" can bring a retaliation claim as being "artificially narrow" with "no basis in text or prior practice" surrounding relevant Title VII law. *Id.*

Although "magic words" are not required to meet the standard for protected activity, Mr. Villano nonetheless used them. There is no dispute that on October 31, 2021, Mr. Villano sent an

e-mail to his direct supervisor, as well as APM's head of human resources, describing conduct which he—as well as an attorney he consulted with—was concerned might rise "to the legal definition of a hostile work environment," nor that he stated that these incidents could place APM "in legal and financial peril"—a clear reference to the practices prohibited by Title VII and TCHRA. Ex. 1 at ¶¶ 16-19; Ex. 2 at ¶¶ 11-14. *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) (defining the scope of hostile work environment harassment under Title VII). Mr. Villano further referred to the situation as "pervasive"—yet another legal term of art within Title VII case law. Ex. 1 at ¶ 20; Ex. 2 at ¶ 15; *Faragher* at 787; *Ellerth* at 754 (defining a "severe or pervasive" test for actionable Title VII violations). Mr. Villano has provided affidavit testimony that he "discussed…Mr. Cano's discriminatory and harassing conduct…with Mr. Chuck Nugent, Demetria Hudley, and Fred Kreger." Ex. 2 at ¶ 16. Finally, APM, via its sworn corporate representative's testimony, does not dispute that he raised protected concerns. Ex. 7 at 64:11-65:4. Finally, there is no dispute that Mr. and Mrs. Villano were spouses who simultaneously worked for APM at all relevant times. Ex. 1 at ¶¶ 5-8; Ex. 2 at ¶¶ 5-7.

At various points throughout the litigation process, APM has suggested that TCHRA does not recognize the precise sort of third-party retaliation complaints approved by a unanimous Supreme Court in *Thompson* as to the "identical", "parallel", "analogous" federal law that TCHRA explicitly exists to mirror at the state level. This novel argument, which if adopted would require this court to legalize third-party retaliation by employers under Texas law for the first time in fifteen years, relies exclusively on pre-*Thompson* authority. In *Dias v. Goodman Mfg. Co., L.P.*—which held that TCHRA did not permit third-party retaliation claims—the Houston Court of Appeals noted that "the purpose of the TCHRA is to provide for the execution of the policies of

Title VII of the Civil Rights Act of 1964" and explicitly based its decision on "a split of authority among federal courts regarding whether a plaintiff may assert a claim for retaliation when his employer targets him for an adverse employment action because of the protected activity of a third party such as a friend or relative." *Dias v. Goodman Mfg. Co., L.P.*, 214 S.W.3d 672, 677 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

APM can bring no convincing argument as to why the Court should rely upon this Houston Court of Appeals decision, which explicitly relied on a now-nonexistent split in authority among federal courts in reaching its conclusion, rather than the later decision of a unanimous United States Supreme Court which expressly resolved the split in Mrs. Villano's favor four years later.

This Court should not adopt an interpretation of TCHRA derided as too narrow for Justice Scalia's sensibilities with respect to the very federal law that TCHRA explicitly exists to enforce. There is no reason to deviate from the veritable mountain of directly applicable case law—and the text of the TCHRA itself—requiring that this Court's interpretation of the TCHRA mirror federal law. The Court must decline any request by APM to write new law that would once again allow, in defiance of direct Supreme Court precedent, Texas employers to retaliate against employees because their spouses complain about workplace discrimination or harassment. Mrs. Villano therefore moves for traditional summary judgment as to the *prima facie* element of protected activity.

## B. MRS. VILLANO SUSTAINED AN ADVERSE EMPLOYMENT ACTION WITHIN THE MEANING OF TCHRA.

For TCHRA purposes, "[t]ermination is unquestionably a materially adverse employment action." *Clark*, 544 S.W.3d at 788–89. Mr. and Mrs. Villano have provided sworn affidavit testimony on this point, as well as a verified copy of Mrs. Villano termination letter, and APM's interrogatories describing the (albeit disputed) reasons for the termination. Ex. 1 at ¶ 21; Ex. 2 at

¶ 19; Ex. 8; Ex. 9. Defendant's active pleading also admits that Mrs. Villano "was laid off in a reduction in force effective December 10, 2021." (*See* Dkt. 24 at ¶ 28). There is accordingly no genuine issue of material fact as to whether Mrs. Villano sustained an adverse employment action within the meaning of TCHRA, and she therefore moves for traditional summary judgment as to her second *prima facie* element.

### C. MRS. VILLANO HAS DEMONSTRATED A *PRIMA FACE* CAUSAL LINK WITHIN THE MEANING OF TCHRA.

"The causation standard for the *McDonnell Douglas* prima-facie-case element is not onerous and can be satisfied merely by proving close timing between the protected activity and the adverse action." *Clark* at 782. "[A] time lapse of up to four months has been found sufficient to satisfy the causal connection[.]" *Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (citing *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997); *Weeks v. NationsBank*, N.A., 2000 U.S. Dist. LEXIS 4069, at *9, No. CIV.A.3:98- CV-1352M, 2000 WL 341257, at *3 (N.D. Tex. 2000).

In the present case, Mr. Villano's protected activity occurred on October 31, 2021. This is supported by the Villano's affidavit testimony and a verified copy of Mr. Villano's written complaint to his supervisor and APM's human resources department. Ex. 1 at ¶ 16; Ex. 2 at ¶ 11; Ex. 5. APM terminated the Villanos on December 10, 2021. Ex. 1 at ¶ 21; Ex. 2 at ¶ 19; Ex. 8. Defendant's active pleading also admits that Mrs. Villano "was laid off in a reduction in force effective December 10, 2021." (*See* Dkt. 24 at ¶ 28). Defendant's active pleading further acknowledges that Mrs. Villano "incurred no formal disciplinary action" before her termination. *Id.* at ¶ 29. The Villanos also testify that no other members of leadership were contemporaneously terminated. Ex. 1 at ¶ 23; Ex. 2 at ¶ 20. Mrs. Villano has therefore satisfied this element of her

*prima facie* retaliation claim as a matter of law, and moves for traditional summary judgment as to the third element of her *prima facie* burden.

## IV. NO-EVIDENCE SUMMARY JUDGMENT

In a no-evidence motion, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by…showing that…an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c).

APM's First Amended Original Answer, filed on January 9, 2024, contains a laundry list of inapplicable affirmative defenses for which APM has failed to produce a scintilla of evidence (Dkt. 24 at ¶¶ 1-6). Mrs. Villano moves for no-evidence summary judgment for these affirmative defenses on the following grounds.

### A. APM CAN PUT FORTH NO EVIDENCE THAT MRS. VILLANO HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

In its Amended Answer, APM cites as an affirmative defense that "Plaintiffs' Original Petition fails to state a claim upon which relief may be granted." (Dkt. 24 at ¶ 1). Mrs. Villano does not understand this to set forth a valid affirmative defense, but rather her burden for articulating her claim in her pleading. *See generally*, FED. R. CIV. P. 12(b)(6). APM has never moved to dismiss Mrs. Villano's claims on this basis, despite having filed two pleadings responsive to Mrs. Villano's Original Petition. *See* FED. R. CIV. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."). Nonetheless, because APM can put forth no evidence on this pled affirmative defense, and because she is entitled to judgment thereon as a matter of law, Mrs. Villano hereby moves for no-evidence summary judgment as to all elements.

**B. APM CAN PUT FORTH NO EVIDENCE MRS. VILLANO'S CLAIMS ARE BARRED BECAUSE HER EMPLOYMENT WAS AT-WILL.**

In its Amended Answer, APM cites as an affirmative defense that "Plaintiffs' claims are barred in whole or in part because their employment by Defendant was at-will." (Dkt. 24 at ¶ 2).

Mrs. Villano is unaware of any state, federal, or local authority which supports the notion that an employer may avoid liability under TCHRA based on an employee's at-will status. This non-sequitur by APM is not a colorable affirmative defense. Mrs. Villano therefore moves for no-evidence summary judgment on all elements of this affirmative defense, as she is entitled to judgment as a matter of law.

**C. APM CAN PUT FORTH NO EVIDENCE THAT MRS. VILLANO FAILED TO EXHAST HER ADMINISTRATIVE REMEDIES.**

In its Amended Answer, APM cites as an affirmative defense that "Plaintiffs' claims are barred in whole or in part by Plaintiffs' failure to exhaust their administrative remedies." (Dkt. 24 at ¶ 3).

APM has not produced, and cannot produce, any evidence demonstrating that Mrs. Villano failed to exhaust her administrative remedies. Mrs. Villano therefore moves for no-evidence summary judgment on all elements of this affirmative defense, as she is entitled to judgment thereon as a matter of law.

**D. APM CAN PUT FORTH NO EVIDENCE THAT MRS. VILLANO'S CLAIMS ARE BARRED BY HER FAILURE TO MITIGATE HER DAMAGES.**

In its Amended Answer, APM cites as an affirmative defense that "Plaintiffs' claims are barred in whole or in part by Plaintiffs' failure to mitigate their damages." (Dkt. 24 at "[A]n injured party has a duty…to use reasonable diligence to attain substantially similar employment and, thereby, mitigate damages." *Jackson v. Host Intern., Inc.*, 426 Fed. Appx. 215, 222 (5th Cir. 2011). The burden of an "affirmative defense of failure to mitigate lies entirely with the defendant,

including the burden to establish the amount that the front pay award should be tolled or reduced." *Id*. at 224.

APM has not produced, and cannot produce, any evidence indicating that Mrs. Villano failed to mitigate any alleged damages, including any back pay, front pay, compensatory, or punitive damages.

APM has not produced, and cannot produce, any evidence indicating that Mrs. Villano failed to use reasonable diligence to attain substantially similar employment.

APM has not produced, and cannot produce, any evidence indicating that the employment sought by Mrs. Villano was not substantially similar.

APM has not produced, and cannot produce, any evidence demonstrating the amount by which Mrs. Villano's damages should be tolled or reduced based on any failure to mitigate.

Mrs. Villano therefore moves for no-evidence summary judgment on all elements of this affirmative defense.

## IV. CONCLUSION

**WHEREFORE, PREMISES CONSIDERED,** Mrs. Villano hereby moves for traditional summary judgment as to her *prima face* retaliation claim as set forth above, as well as no-evidence summary judgment on the affirmative defenses set forth above, together with any other relief to which she is entitled to, whether at law or in equity.

Respectfully submitted,

**KAPLAN LAW FIRM, PLLC**
2901 Bee Cave Road, Suite G
Austin, Texas 78746
Tel: (512) 814-8522
Fax: (512) 692-2788

*/s/ Trenton Lacy*
Trenton Lacy
Texas Bar No. 24106176
tlacy@kaplanlawatx.com
Caitlin Boehne
Texas Bar No. 24075815
cboehne@kaplanlawatx.com
Austin Kaplan
Texas Bar No. 24072176
akaplan@kaplanlawatx.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing was served via electronic service on the following counsel on Monday, September 28, 2026.

FERGUSON BRASWELL FRASER KUBASTA PC
Kenneth H. Holt
kholt@fbfk.law
Charles “Danny” Brooks
dbrooks@fbfk.law
3200 Southwest Freeway, Suite 3200
Houston, Texas 77027
Telephone: 713-403-4200
Facsimile: 713-403-4201

*/s/ Kenneth H. Holt*
**Kenneth H. Holt**